JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| LOUIS C. BECHTLE, in his capacity as Receiver FOR Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, LLC and Neely Young | DIANA WISTER and WILLIAM WISTER, h/w, as Trustees of Investor 48, Diana. S. Wister Charitable Remainder Unitrust Dated 2/21/2003 and DIANA WISTER and WILLIAM WISTER, h/w, as Trustees and/or |

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Dooley Kent, Esquire
Conrad O'Brien PC
1500 Market Street, West Tower, Suite 3900, Philadelphia PA 19147

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** |  |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 754
Brief description of cause:
SEC Receiver's recovery of fraudulent transfer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In excess of $16,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Hon. John R. Padova   DOCKET NUMBER   09-01634

DATE   6/28/2013          SIGNATURE OF ATTORNEY OF RECORD   *Kevin Dooley Kent*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___1500 Market Street, West Tower, Suite 3900, Philadelphia, PA 19102___

Address of Defendant: ___304 Creek Road, Coatesville, PA 19320___

Place of Accident, Incident or Transaction: ___Pennsylvania___
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒
RELATED CASE, IF ANY:
Case Number: __09-01634__  Judge __John R. Padova__  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☒  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☒  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, __Kevin Dooley Kent__, counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.            **See attached re: Exclusive Jurisdiction**

DATE: __6/28/2013__     _Kevin Dooley Kent_          __85962__
                        Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __6/28/2013__     _Kevin Dooley Kent_          __85962__
                        Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

Pursuant to Section VII of the June 25, 2009 Order Appointing a Receiver (attached to the Complaint herein as Exhibit "A"), this case is ancillary to 2009 Civil Action No. 01634, assigned to the Honorable Judge John R. Padova. The Courts of the Eastern District of Pennsylvania have exclusive jurisdiction over this matter.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| LOUIS C. BECHTLE, in his capacity as Receiver for Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, LLC and Neely Young | : | CIVIL ACTION |
| v. | : | |
| DIANA WISTER and WILLIAM WISTER, h/w, as Trustees of Investor 48, and DIANA WISTER and WILLIAM WISTER, h/w, as Trustees and/or Directors of Investor 57 | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                         ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                    (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( )

| | | |
|---|---|---|
| 6/28/2013 | Kevin Dooley Kent, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-523-8306 | 215-523-9706 | kkent@conradobrien.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LOUIS C. BECHTLE, in his capacity as** : <br> **Receiver FOR Donald Anthony Walker** : <br> **Young, Acorn II, L.P., Acorn Capital** : <br> **Management, LLC and Neely Young** : <br> : <br> **Plaintiff** : <br> : <br> **v.** : <br> : <br> **DIANA WISTER AND WILLIAM** : <br> **WISTER, h/w,** : <br> **as Trustees of Investor 48,** : <br> **Diana S. Wister Charitable Remainder** : <br> **Unitrust Dated February 21, 2003** : <br> **304 Creek Road** : <br> **Coatesville, Pennsylvania  19320** : <br> : <br> **and** : <br> : <br> **DIANA WISTER AND WILLIAM** : <br> **WISTER, h/w,** : <br> **as Trustees and/or Directors of Investor 57,** : <br> **Margaret Dorrance Strawbridge** : <br> **Foundation II of Pa** : <br> **304 Creek Road** : <br> **Coatesville, Pennsylvania  19320** : <br> : <br> **Defendants.** : | Civil Action No.: |

## **COMPLAINT**

## **INTRODUCTION**

1.   This action is brought pursuant to a June 25, 2009 Order (the "Receivership Order")

issued by the Honorable John R. Padova, United States District Judge for the Eastern District of

Pennsylvania, in the underlying action brought by the Securities and Exchange Commission

("SEC" or the "Commission") against Defendants Donald Anthony Walker Young ("Young"),

Acorn II, L.P., Acorn Capital Management, L.L.C. (collectively, "SEC Defendants") and Relief

Defendants Oak Grove Partners, L.P., Neely Young ("Neely Young"), and W.B. Dixon Stroud (collectively, "SEC Relief Defendants"), styled <u>Securities and Exchange Commission v. Young, et al.</u>, Civil Action No. 09-01634 (the "SEC Action").  A true and correct copy of the Receivership Order is attached hereto as Exhibit "A."

2.    The action arises out of the fraudulent Ponzi scheme Young operated through certain of the Receivership Entities, including Acorn II, L.P. (herein the "Acorn II Fund") from 1999 through on or about April 17, 2009, when the SEC filed the Complaint and requested, <u>inter alia</u>, a temporary restraining order and an order freezing the assets of SEC Defendants and SEC Relief Defendants.   On or about April 24, 2009, a Consent Order of Preliminary Injunction and Order Freezing Assets and Granting Other Relief was entered by this Court against the SEC Defendants and SEC Relief Defendant Neely Young

3.    In connection with the SEC Action, and pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Commission proffered Requests for Admission to SEC Defendant Young.  On or about May 27, 2010, in response thereto, Defendant Young admitted to his misappropriation of funds invested with certain of the Receivership Entities to, <u>inter alia</u>, pay other investors with the Receivership Entities and expend for his and his family's own personal benefit.  A true and correct copy of Defendant Young's Answer to the SEC's First Request for Admissions is attached hereto as Exhibit "B."

4.    On April 11, 2011 this Court granted the SEC Partial Summary Judgment establishing liability and injunctive relief as against Young.

5.    On July 20, 2010, in a related criminal action, <u>United States v. Young</u>, No. 10-CR-199 (E.D.Pa.), Young pleaded guilty to charges of mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1957.

6.   Plaintiff Louis C. Bechtle was appointed under the Receivership Order as the receiver ("Receiver" or "Plaintiff") with the goal and purpose to investigate, marshal and preserve, <u>inter alia</u>, the assets, monies, securities, choses in action and properties ("Receivership Assets") of the SEC Defendants and SEC Relief Defendant Neely Young (collectively, the "Receivership Entities"), in order to maximize the recovery available to the investors defrauded during Young's operation of the Ponzi scheme.

7.   Plaintiff, Louis C. Bechtle, in his capacity as Receiver for, <u>inter alia</u>, the Receivership Assets, by and through his counsel, hereby asserts this action to avoid the fraudulent transfers made by certain of the Receivership Entities to Diana Wister and William Wister, by and through two entities that they controlled, the Diana S. Wister Charitable Remainder Unitrust dated February 21, 2003 (the "Unitrust") and the Margaret Dorrance Strawbridge Foundation II of PA (the "Foundation"), during the course of Young's operation of the Ponzi scheme.

## PARTIES

8.   Plaintiff is vested by the Receivership Order as a representative of this Court with the full powers of an equity receiver.  <u>See</u> Exhibit "A."

9.   The Receivership Order authorizes Plaintiff to institute legal proceedings on behalf of and for the benefit of the Receivership Estate, in order to preserve and/or increase the assets of the Receivership Estate.  The Receiver is specifically authorized to pursue actions to, <u>inter alia</u>, recover Receivership Assets from third parties such as investors with the Receivership Entities. <u>See</u> Exhibit "A" at Section X, ¶ R.

10. Defendant Diana Wister ("Diana Wister") has an address of 304 Creek Road, Coatesville, Pennsylvania, 19320.  Diana Wister is a lifelong personal investor, and at all relevant times has served as a trustee and/or director of the Unitrust and the Foundation, both of which were

3

invested with the Acorn II Fund.  The Acorn II Fund made payouts and/or distributions to, for the benefit of, and/or at the request of Diana Wister in her capacity as trustee and/or director of the Unitrust and the Foundation during Young's operation of a Ponzi scheme.

11. Defendant William Wister ("Bill Wister") has an address of 304 Creek Road, Coatesville, Pennsylvania, 19320.  For many years Bill Wister worked as an investment professional, and at all relevant times has served as a trustee and/or director of the Unitrust and the Foundation, both of which were invested with the Acorn II Fund.  The Acorn II Fund made payouts and/or distributions to for the benefit of, and/or at the request of Bill Wister in his capacity as trustee and/or director of the Unitrust and the Foundation during Young's operation of a Ponzi scheme.

## JURISDICTION AND VENUE

12. Federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by federal securities laws pursuant to 15 U.S.C. §§ 77v(a) and 78aa.

13. This Court has ancillary jurisdiction over this matter pursuant to 28 U.S.C. § 1367 as the Receiver brings this complaint to accomplish the objectives of the Receivership Order entered in the SEC Action and as such, this action forms part of the same case or controversy.

14. This Court is vested with jurisdiction pursuant to the Receivership Order as it retains exclusive jurisdiction and possession of the assets, monies, securities, choses in action and properties of the Receivership Entities.  The Receivership Order further requires all claims and actions to determine disputes relating to the Receivership Assets and/or records to be filed with this Court.  See Exhibit "A."

15. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 754 and 1692.  The

Receiver has filed certified copies of the Receivership Order with the United States District Court for each federal district.  As a result of such filings, the Receiver is vested with complete jurisdiction and control of any real and/or personal property of the Receivership Estate located in any federal district, with the right to take possession of such property.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754; 1391(b) and 1692.

## FACTUAL BACKGROUND

### The Ponzi Scheme

17.     Acorn Capital Management, LLC ("Acorn Capital LLC") was formed in 1999 with Young as a partner and managing member.  From November 1999 through June 25, 2009, Acorn Capital, LLC served as the General Partner and investment advisor of two limited partnerships: Acorn Capital Management II, Limited Partnership and the Acorn II Fund, which succeeded Acorn Capital Management II, Limited Partnership.  These limited partnerships were formed by Young to invest in securities and other instruments of the United States.

18.     The Acorn II Fund solicited and accepted funds from the investors who were Acorn II Fund limited partners ("Acorn Limited Partner" or "Limited Partner") and purportedly investing in accordance with the partnerships' stated purpose.   However, from the beginning, the funds invested in the Acorn II Fund were improperly and fraudulently mishandled and misappropriated by Young.

19.     Throughout the Acorn II Fund's existence, the total amount of assets in the investor capital accounts shown on the Acorn II Fund's account statements Young created and provided to the Acorn II Fund's limited partners exceeded the actual amount of the assets of the Acorn II Fund.

22.     Young combined the capital accounts for investors in the Acorn II Fund and used funds invested by later Acorn Limited Partners to, among other things. pay earlier Acorn Limited Partners alleged "profits" in the nature of a Ponzi scheme.  In so doing, Young was able to attract new investors, and continue perpetrating the fraud.

23.     Young also unlawfully withdrew investor funds and directed them for his and his family's benefit, and to pay their personal expenses, and to fund his own personal account(s) held in his name, and to account(s) he held jointly with his wife, Relief Defendant Neely Young.

24.     For the nearly ten- year period from November 1999 through June 25, 2009, substantially all of the money received by Young was taken directly or indirectly from Acorn Capital, LLC, the Acorn II Fund or Acorn Capital Management Limited Partnership, predecessor of the Acorn II Fund.

25.     Substantially all of the money deposited in Acorn Capital, LLC accounts by Young were taken from the financial accounts of the Acorn II Fund Limited Partnership or its predecessor Acorn Capital Management II, Limited Partnership.

26.     Young concealed his fraudulent misappropriation and mishandling of investor funds through numerous misrepresentations to investors and others.

27.     Prior to his appointment, the Receiver could not have discovered any claim against Defendants relating to and/or arising out of Defendant's involvement in or with the Acorn II Fund as set forth below.

28.     Any temporal limitations, statutory or otherwise, on the Receiver's ability to bring the causes of action set forth below were subject to equitable tolling as a result of, among other things, Young's adverse domination of the Acorn II Fund and his fraudulent concealment of the Receiver's claims.

6

## Transfer of Acorn II's Assets to Defendants

29.     Defendants, by and through the Unitrust and the Foundation, were Limited

Partners in the Acorn II Fund.

30.     The Acorn II Fund made payouts and/or distributions to, for the benefit of, or at

the request of Defendants in the form of cash distributions or otherwise.

31.     The contributions made by, and payouts and/or distributions made to, the Wisters

are detailed on the Schedule of Transactions concerning Defendants' investments, true and

correct copies of which are attached hereto as Exhibit "C" and "D."  The Schedule of

Transactions is based on information currently available to the Receiver and has been previously

disclosed to the Wisters as the Receiver's conclusions concerning the transactional activity

underlying their investments with the Acorn II Fund.

32.     Specifically, on the date(s) and in the amount(s) set forth on the Schedule of

Transactions concerning the Wisters' Unitrust investment with Acorn II, the Wisters received

payouts and/or distributions from the Acorn II Fund in the collective sum of $6,138,242.00.  See

Exhibit "C."

33.     Moreover, on the date(s) and in the amount(s) set forth on the Schedule of

Transactions concerning the Wisters' Foundation investment with the Acorn II Fund, the Wisters

received payouts and/or distributions from the Acorn II Fund in the collective sum of

$11,842,755.00.  See Exhibit "D."

### COUNT I
### ACTION TO AVOID FRAUDULENT TRANSFER UNDER 12 Pa.C.S.A. § 5014(a)
### Bechtle v. Diana Wister and William Wister, h/w,
### As Trustees of the Diana S. Wister Unitrust Dated February 21, 2003

34.     The Receiver incorporates paragraphs one through 33, above, as if set forth fully

at length herein.

7

35.     As set forth on Exhibit "C," the Acorn II Fund made payments and/or distributions to, for the benefit of, or at the request of Defendants in 2007.

36.     All transfers of the Acorn II Fund's assets to, for the benefit of, or at the request of Defendants in 2007 were fraudulent transfers within the meaning of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5101, et seq.

37.     Because Young operated the Acorn II Fund as a Ponzi scheme, all transfers of the Acorn II Fund's assets to, for the benefit of, or at the request of Defendants in 2007 were made with actual intent to hinder, delay and/or defraud any of the Receivership Entities' creditors and/or debtors, and are fraudulent.  12 Pa. C.S.A. § 5104(a)(1).

38.     When the transfers were made to Defendants, Young was operating the Acorn II Fund as a Ponzi scheme intending to incur, or believing or reasonably believing that the Acorn II Fund would incur, debts beyond the Acorn II Fund's ability to pay them as they became due.  12 Pa. C.S.A. § 5104(a)(2)(ii).

39.     When the transfers were made to Defendants, the Acorn II Fund had actual assets that were unreasonably small in relation to the assets invested with the Acorn II Fund by the Limited Partners.  12 Pa. C.S.A. § 5104(a)(2)(i).

40.     The Receiver is entitled to avoid the fraudulent transfers of assets from the Acorn II Fund to, for the benefit of, or at the request of Defendants to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

WHEREFORE, Plaintiff, Louis C. Bechtle, in his capacity as Receiver for the assets and records of Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.L.C. and Neely Young, requests this Court enter a judgment in his favor and against Defendants Diana Wister and William Wister, as Trustees of the Diana S. Wister Unitrust Dated February

8

21, 2003, avoiding and setting aside the transfers made by the Acorn II Fund to Defendants.  To

the extent the funds have been used to acquire real or personal property in which Defendants

claims an interest, the Receiver also seeks a constructive trust and/or equitable lien over those

assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets.  The

Receiver also requests interest, costs, and such other and further relief as this Court may deem

just and proper.

**COUNT II**
**ACTION TO AVOID FRAUDULENT TRANSFER UNDER 12 Pa.C.S.A. § 5014(a)**
**Bechtle v. Diana Wister and William Wister, h/w,**
**as Trustees and/or Directors of the Margaret Dorrance Strawbridge Foundation II of PA**

42.     The Receiver incorporates paragraphs one through 41, above, as if set forth fully

at length herein.

43.     As set forth on Exhibit "D," the Acorn II Fund made payments and/or

distributions to, for the benefit of, or at the request of Defendants between 2004 and 2007.

44.     All transfers of the Acorn II Fund's assets to, for the benefit of, or at the request

of Defendants between 2004 and 2007 were fraudulent transfers within the meaning of the

Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5101, et seq.

45.     Because Young operated the Acorn II Fund as a Ponzi scheme, all transfers of the

Acorn II Fund's assets to, for the benefit of, or at the request of Defendants between 2004 and

2007 were made with actual intent to hinder, delay and/or defraud any of the Receivership

Entities' creditors and/or debtors, and are fraudulent.  12 Pa. C.S.A. § 5104(a)(1).

46.     When the transfers were made to Defendants, Young was operating the Acorn II

Fund as a Ponzi scheme intending to incur, or believing or reasonably believing that the Acorn II

Fund would incur, debts beyond the Acorn II Fund's ability to pay them as they became due.  12

Pa. C.S.A. § 5104(a)(2)(ii).

9

47.     When the transfers were made to Defendants, the Acorn II Fund had actual assets that were unreasonably small in relation to the assets invested with the Acorn II Fund by the Limited Partners.  12 Pa. C.S.A. § 5104(a)(2)(i).

49.     The Receiver is entitled to avoid the fraudulent transfers of assets from the Acorn II Fund to, for the benefit of, or at the request of Defendants to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

WHEREFORE, Plaintiff, Louis C. Bechtle, in his capacity as Receiver for the assets and records of Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.L.C. and Neely Young, requests this Court enter a judgment in his favor and against Defendants Diana Wister and William Wister, as Trustees and/or Directors of the Margaret Dorrance Strawbridge Foundation II of PA, avoiding and setting aside the transfers made by the Acorn II Fund to Defendants.  To the extent the funds have been used to acquire real or personal property in which Defendants claims an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets.  The Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

**COUNT III**
**UNJUST ENRICHMENT**
**Bechtle v. Diana Wister and William Wister, h/w,**
**As Trustees of the Diana S. Wister Unitrust Dated February 21, 2003**

50.     The Receiver incorporates paragraphs one through 49, above, as if set forth at length herein.

51.     The Acorn II Fund conferred a benefit on Defendants by making the transfers set forth herein.

52.     The Wisters knowingly and voluntarily accepted and retained the benefit conferred upon them by the Acorn II Fund.

53.     Under the factual circumstances as presented, it would be inequitable for the Wisters to retain the benefits of the payouts and/or distributions from the Acorn II Fund because those payouts and/or distributions from the Acorn II Fund were the product of a Ponzi scheme and were comprised of monies paid into the Ponzi scheme by other Limited Partners of the Acorn II Fund.

WHEREFORE, Plaintiff, Louis C. Bechtle, in his capacity as Receiver for the assets and records of Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.L.C. and Neely Young, requests this Court enter judgment in his favor and against Defendants, Diana Wister and William Wister, as Trustees of the Diana S. Wister Unitrust Dated February 23, 2003, in the amount that they were unjustly enriched.  To the extent the funds have been used to acquire real or personal property in which Defendant claims an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets.  The Receiver also requests interest, costs, and such other and further relief as the Court may deem just and proper.

**COUNT IV**
**UNJUST ENRICHMENT**
**Bechtle v. Diana Wister and William Wister, h/w,**
**as Trustees and/or Directors of the Margaret Dorrance Strawbridge Foundation II of PA**

54.     The Receiver incorporates paragraphs one through 53, above, as if set forth at length herein.

55.     The Acorn II Fund conferred a benefit on Defendants by making the transfers set forth herein.

11

56.     The Wisters knowingly and voluntarily accepted and retained the benefit conferred upon them by the Acorn II Fund.

57.     Under the factual circumstances as presented, it would be inequitable for the Wisters to retain the benefits of the payouts and/or distributions from the Acorn II Fund because those payouts and/or distributions from the Acorn II Fund were the product of a Ponzi scheme and were comprised of monies paid into the Ponzi scheme by other Limited Partners of the Acorn II Fund.

WHEREFORE, Plaintiff, Louis C. Bechtle, in his capacity as Receiver for the assets and records of Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.L.C. and Neely Young, requests this Court enter judgment in his favor and against Defendants, Diana Wister and William Wister, as Trustees and/or Directors of the Margaret Dorrance Strawbridge Foundation II of PA, in the amount that they were unjustly enriched.  To the extent the funds have been used to acquire real or personal property in which Defendant claims an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with the Receivership Assets.  The Receiver also requests interest, costs, and such other and further relief as the Court may deem just and proper.

Dated: June 28, 2013                     /s/ Kevin Dooley Kent
                                    Patricia M. Hamill (Pa. I.D. No. 48416)
                                    Kevin Dooley Kent (Pa. I.D. No. 85962)
                                    CONRAD O'BRIEN, P.C.
                                    1500 Market Street
                                    Centre Square
                                    West Tower, Suite 3900
                                    Philadelphia, Pennsylvania 19102-2100
                                    (215) 864-9600

                                    Attorneys for Louis C. Bechtle, as Receiver for
                                    Donald Anthony Walker Young, Acorn Capital
                                    Management, LLC, Acorn II, L.P. and Neely Young

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** :<br><br>**Plaintiff** :<br><br>**v.** :<br><br>**Donald Anthony Walker Young, a/k/a D.A. Walker Young, Acorn Capital Management, LLC, and Acorn II, L.P.** :<br><br>**Defendants** :<br><br>**Oak Grove Partners, L.P.**<br>**Neely Young, and W.B. Dixon Stroud Jr.,** :<br><br>**Relief Defendants** : | Civil Action No.: 2:09-cv-01634-JP |

### ORDER APPOINTING A RECEIVER

AND NOW, this 25ᵗʰ day of June , 2009, upon consideration of the

application of Louis C. Bechtle to serve as Receiver, and Plaintiff's Motion for appointment of a

receiver to assume control of, marshal, pursue, and preserve the assets of defendants Donald

Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.P., and relief defendant

Neely Young, as well as any other assets that may be collected in the captioned matter, and to

protect those assets pending further order of the Court, it is ORDERED that the Motion is

GRANTED.

IT IS THEREFORE ORDERED as follows:

1

**I.**

This Court hereby takes exclusive jurisdiction and possession of the assets, monies, securities, choses in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of Donald Anthony Walker Young, Neely Young, Acorn II, L.P., and Acorn Capital Management, LLC (collectively, the "Source Entities") and/or any entities that the Source Entities own or control or in which any of them have an interest (the "Receivership Assets").

This Court hereby further takes exclusive jurisdiction and possession of the books, records, computers, and documents, including without limitation, every writing of any kind, type, and description or other instrument or device by which, through, or upon which information has been recorded or preserved, including without limitation memoranda, notes, letters, bank records, business records, statements, checks, wire instructions and confirmations, tape recordings, electronic and digital media of all types, audio and video recordings, and photographs of the Source Entities and/or any and all entities the Source Entities own or control, or in which any of them has an interest, including without limitation, trusts, limited liability companies, corporations, partnerships, and joint ventures ("Receivership Records"); provided, however, that the SEC and criminal authorities may retain copies of any such records in their possession, custody, or control.

**II.**

IT IS FURTHER ORDERED THAT Louis C. Bechtle, Esquire is hereby appointed Receiver for the Receivership Assets and the Receivership Records, with the full powers of an equity receiver. The Receiver shall be the agent of this Court in acting as Receiver under this Order. The goal and purpose of the Receivership is to assume control of, marshal, pursue, and

2

preserve the Receivership Assets with the objective of maximizing the recovery of defrauded

investors and, to the extent that the assets recovered may be inadequate to make them whole,

ensuring that the distribution of those assets is as just and equitable as practicable.  No bond shall

be required to assure his conscientious performance of the duties and responsibilities imposed by

this Order or as the Court directs.

Louis C. Bechtle (the "Receiver") is authorized to retain the law firm of Conrad O'Brien,

P.C. (the "Law Firm") and Kroll, Inc. (the "Accountant") as his counsel and accountant,

respectively, in connection with this appointment.  With the Court's approval, the Receiver, the

Law Firm, and the Accountant shall be compensated from the Receivership Assets for all

reasonable fees and costs.

The agreed upon fee schedules are as follows, which hourly fee rates are hereby found to

be reasonable:

### Receiver

| Name | Rate |
|------|------|
| Louis C. Bechtle | 495 |

### The Law Firm

| Name/ Position | Rate |
|----------------|------|
| P. Hamill | 350 |
| K. Kent | 325 |
| Associates | Up to 200 |
| Paralegals | 100 |

3

### The Accountant

| Name | Rate |
|------|------|
| W. Nugent/J. Slavek | $375 |
| Senior Manager | $205 |
| Manager | $175 |
| Senior Associate | $150 |
| Associate | $150 |
| Junior Staff | $135 |

The Law Firm and the Accountant may add or substitute other professionals with comparable experience at the same or lower rates, with the written approval of the Receiver and the SEC.

## III.

IT IS FURTHER ORDERED THAT the Receiver is hereby authorized on behalf of the Court to take exclusive custody, control, and possession of the Receivership Assets and Receivership Records, wherever located. Until further order of the Court, the Receiver shall have complete and exclusive control, possession, and custody of all Receivership Assets and Receivership Records; provided, however, that the Receiver will permit the SEC and criminal authorities access to Receivership Records upon request.

## IV.

IT IS FURTHER ORDERED THAT all persons, including without limitation the Source Entities, their past or present officers, agents, servants, employees, brokers, facilitators, trustees, escrow agents, attorneys, accountants, partners, and all persons in active concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, and specifically including without limitation any past or present bank or other financial or depository institution holding accounts for or on behalf of the Source Entities, or any entities the Source Entities own or control or in which they have an interest or for which any of

4

them is an authorized signatory, shall promptly: identify to the Receiver by account number and balance as of the time of service of this Order, or description of the nature and value as of the time of service of this Order, all Receivership Assets in the possession or under the control of any one or more of them; deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them; and promptly surrender to the Receiver or his agents all Receivership Records, in the same manner as they would be provided if the Receiver were the signatory on the account. No separate subpoena shall be required.

## V.

IT IS FURTHER ORDERED THAT all persons, including without limitation the Source Entities, their past or present partners, officers, agents, servants, employees, brokers, bankers, facilitators, trustees, escrow agents, attorneys, accountants, creditors, claimants, and all persons in concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, are enjoined from interfering in any way with the operation of the Receivership or directly or indirectly destroying, mutilating, erasing, altering, concealing, disposing of, or disturbing the Receivership Assets and Receivership Records.

## VI.

IT IS FURTHER ORDERED THAT the Source Entities, including without limitation their past or present partners, officers, agents, servants, employees, brokers, bankers, facilitators, trustees, escrow agents, attorneys, accountants, and all persons in concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, are ordered to cooperate fully with the Receiver, the Law Firm, and the Accountant, by, among other things, (1) within five business days following service of this Order, providing to the Receiver a full accounting of all Receivership Assets and Receivership Records, including

5

any outside of the United States; (2) immediately transferring to the territory of the United States and delivering to the Receiver all Receivership Assets and Receivership Records located outside of the United States; (3) providing the Receiver access to Receivership Records and Receivership Assets outside of the United States by signing, upon request, any appropriate authorization; (4) delivering to the Receiver all Receivership Assets and Receivership Records, together with any related documents, records, names and contact information for persons who may be custodians or otherwise involved with or knowledgeable of the Receivership Assets or Receivership Records; (5) providing to the Receiver any information that the Receiver deems necessary to exercising his authority hereunder, including information regarding the location of and access to any and all documents, computer files and databases in their possession, custody or control relating to the Receivership Assets or Receivership Records, and including without limitation documents relating to the business operations of the Source Entities, the offer or sale of securities, the allegations of the Complaint in this action, and the disposition of investor funds; (6) providing all related financial records, computers, computer files, e-mail, passwords, keys, security cards, access codes for premises, vehicles, vessels, and aircraft; (7) granting access to safes or safe deposit boxes or any other facility containing Receivership Assets or Receivership Records; (8) upon the request of the Receiver, executing any consent, authorization, resolution, or other document as may be required by any person to confirm the authority of the Receiver; (9) upon the request of the Receiver, executing any consent, authorization, resolution, or other document as may be necessary to recover from foreign, federal, state, and local tax authorities any assets belonging to the Receivership Estate, including any overpayments of taxes; (10) upon the request of the Receiver, and subject only to the good faith assertion of privilege, providing to the Receiver complete and responsive answers under oath or under penalty of perjury to all

questions posed by the Receiver or the Law Firm; and (11) advising in writing all persons who owe a debt to the Source Entities that all debts should be paid to the Receiver.

## VII.

IT IS FURTHER ORDERED THAT all claims against and all actions to determine disputes relating to Receivership Assets or Receivership Records shall be filed in this Court. Except by leave of Court, during the pendency of the Receivership ordered herein, the Source Entities, and all other persons and entities, be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Source Entities, the Receiver, Receivership Assets, Receivership Records, or the Receivership's duly authorized agents acting in their capacities as such, or any combination of the same, including but not limited to, the following actions:

A.   Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

B.   Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Source Entities or any property claimed by the Source Entities, or attempting to foreclose, forfeit, alter, dilute, or terminate any of the Source Entities' interests in property, whether such acts are part of a judicial proceeding or otherwise;

C.   Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Source Entities, or the Receiver, or any agent of the Receiver;

D.   Commencing, prosecuting, or litigating any proceeding initiated pursuant to the United States Bankruptcy Code; or

E.   Doing any act or thing to interfere with the Receiver taking control, possession or management of Receivership Assets, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Source Entities.

This paragraph does not stay the commencement or continuation of an action or proceeding by the Receiver pursuant to this Order, or any governmental unit, including the SEC or criminal authorities, in connection with such governmental unit's regulatory or enforcement powers.

## VIII.

IT IS FURTHER ORDERED THAT, upon the request of the Receiver, the United States Marshal's Office shall assist the Receiver in carrying out his duties to take possession, custody, or control of, or identify the location of, any Receivership Assets or Receivership Records.

## IX.

IT IS FURTHER ORDERED THAT, to enable the Receiver to carry out his duties hereunder, and only to the extent necessary to enable the Receiver to carry out his duties hereunder, the Receivership Assets are released from the Asset Freeze imposed by this Court by Order By Consent of Preliminary Injunction and Order Freezing Assets and Granting Other Relief entered on April 24, 2009 with respect to the Source Entities in the captioned case and placed in the possession and custody of, and under the control of the Receiver.

## X.

IT IS FURTHER ORDERED THAT, without further Court order unless specifically stated otherwise herein, the Receiver is authorized to:

8

A.   Use reasonable efforts to determine the nature, location, and value of all Receivership Assets and Receivership Records, including without limitation to locate assets that may have been conveyed to partners or business associates of the Source Entities, to third parties, or otherwise concealed;

B.   Sue for, collect, receive and take possession of all Receivership Assets and Receivership Records, including without limitation records related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Source Entities;

C.   Assume full control of Receivership Assets and Receivership Records by, as he deems necessary, removing any officer, independent contractor, employee, or agent of the Source Entities from control and management of the affairs of the Source Entities and otherwise take steps to prevent the withdrawal or misapplication of Receivership Assets entrusted to the Source Entities;

D.   Close or maintain the Source Entities' bank accounts and register such accounts in the name of the Receiver on behalf of the Receivership Estate; open and close bank accounts or other depository accounts as designated depositories for Receivership Assets; have exclusive control of and be made the sole authorized signatory for, all accounts at any bank, brokerage firm, or financial institution that has possession or control of any Receivership Assets; and execute checks or otherwise disburse money from those bank or securities accounts of the Source Entities to pay obligations of the Receivership as further set forth in this Order;

E.   Open, close, manage and register securities accounts in the name of the Receiver on behalf of the Receivership Estate, including any such account of the Source Entities,

9

with authority to purchase, sell or retain securities in any such account;

F.    Take all steps necessary to secure, preserve, hold and manage all Receivership Assets and Receivership Records, and perform all acts necessary to preserve the value of those assets including changing any locks, computer access codes, or other security mechanisms with respect to any premises or other equipment or assets that constitute or contain Receivership Assets or Receivership Records and removing from any premises or real estate constituting a Receivership Asset any person who attempts to interfere with the Receiver or his attorneys or agents in the performance of their duties;

G.    Without breaching the peace, but if necessary with the assistance of local peace officers or U.S. Marshals, enter and secure any premises, wherever located or situated, in order to identify the location or existence of and take possession, custody, or control of Receivership Assets or Receivership Records including without limitation, the premises, files, and information systems, and take all steps that in his judgment he deems necessary or advisable to secure and protect Receivership Assets and Receivership Records; provided, however, that prior to such entry, any necessary legal process is obtained;

H.    Make appropriate notification to the United States Postal Service or any post office or other mail depository to forward delivery to himself of any mail addressed to the Source Entities or any company or entity under the direction or control of the Source Entities, and open, inspect, and take possession and control all such mail to determine the location or identity of assets or the existence and amount of claims;

I.    Make from Receivership Assets such payments, distributions, and disbursements as he deems necessary, advisable, or proper for carrying out the directions of, or exercising

the authority granted by this Order, including without limitation, any payments of insurance premiums to maintain or procure insurance coverage on Receivership Assets, and payments of expenses related to the care of Receivership Assets in the form of livestock; provided, however, that any request for the release of funds to pay expenses not necessary or advisable to secure Receivership Assets or Receivership Records, including without limitation, living and legal expenses of the Source Entities or of any Defendant or Relief Defendant in the captioned action, must be submitted by motion to the Court for adjudication unless the SEC has agreed, in writing, to the requested payment(s). Any payment, distribution, or disbursement made by the Receiver pursuant to this paragraph and without Court Order, shall be described in the next filed Receiver's Report;

J.   Liquidate, windup, and terminate the business and affairs of the Source Entities, but, with authority, in aid of such liquidation, windup, and termination of the Source Entities, conduct the business operations of the Source Entities and the entities controlled by the Source Entities or in which the Source Entities have an interest, but only to the extent that the Receiver, in the exercise of his discretion, determines such continued conduct of the business to be advisable in the interest of maximizing the value of the Receivership Estate, including without limitation the collection of rents; suspension of operations; the institution, continuation or termination of any employment arrangement, lease, or contract; and the sale, abandonment, rental, lease, pledge, hypothecation, or other disposition of the Receivership Assets; and provided, however, that any such action shall be described in the next filed Receiver's Report or in the Receiver's Final Report, whichever in the Receiver's discretion is more practicable;

K.      Compromise or settle any claim of any creditors of the Source Entities, including those instances in which Receivership Assets serve as collateral to secured creditors; and, in connection therewith, surrender such assets to secured creditors upon such conditions as the Receiver determines are appropriate, including the waiver of any deficiency of collateral and release of any underlying obligation secured by the collateral;

L.      Renew, cancel, terminate or otherwise adjust any pending lease agreement to which any of the Source Entities is a party;

M.      With written approval of the SEC, engage or retain such additional persons, including without limitation securities traders, investment advisers, experts, appraisers, and other contractors and technical specialists, that the Receiver determines are necessary or advisable to assist him in carrying out his duties and responsibilities hereunder, provided, however, that any such action shall be described in the next filed Receiver's Report;

N.      Receive, collect, and maintain any and all sums of money due or owing to the Source Entities, whether the same are now due or are hereafter to become due and payable;

O.      During the pendency of the Receivership and prior to the final implementation of any Distribution Plan, receive, maintain, and include in any distribution, any additional sums ordered or paid to compensate victims of the fraud alleged in this matter of which the Receiver has notice and which are directed to the Receiver for distribution in this manner;

P.      Determine the identity of all partners in and investors with the Source Entities, the amounts invested, and previous payments to, or for the benefit of, such parties;

Q.      Issue subpoenas for testimony under oath or for documents, records, and other

tangibles, and engage in formal discovery on behalf of the Receivership Estate under

the Federal Rules of Civil Procedure, on Court-approved adjusted procedures as, in the

Receiver's discretion, are necessary or appropriate;

R.      Institute, prosecute, defend, compromise, or adjust any actions or proceedings based on

law or equity now pending or hereinafter instituted in this Court, as may in his

discretion be necessary or advisable in order to preserve or increase the assets of the

Receivership Estate or to otherwise carry out his duties as set forth herein and to

effectuate the Court's orders, including, in the event that it is not practicable to recover

Receivership Assets from third parties (such as investors with the Source Entities or

recipients of gifts or donations from the Defendants) on a consensual basis without

litigation, to institute and pursue, on behalf of and for the benefit of the Receivership

Estate, in this Court or in any court of competent jurisdiction such actions or

proceedings to impose a constructive trust, obtain possession and/or recover judgment

with respect to persons or entities that hold, control, and/or received, directly or

indirectly, assets or funds or proceeds from the Source Entities; provided, however, that

prior to filing any action against any investor in Acorn LP or its related entities, the

Receiver will determine whether the SEC objects to the filing of the action, and if so,

shall seek, under seal, leave from the Court to file the action, with the SEC having five

business days in which to file their objection(s), under seal, to the filing of the action;

S.      Take any action that the Source Entities would be authorized to take;

T.      Prepare and submit to the Court, the SEC, and the Defendants and Relief Defendants a

Plan of Distribution providing for interim and/or final distributions with respect to the

Receivership Assets and, as ordered, any other assets collected in this matter or any

related matter for approval by the Court;

U.     Comply with all income tax reporting requirements, including the preparation and filing
       of tax returns, with respect to Receivership Assets and business and, as ordered, any
       other assets collected in this matter or any related matter; and be designated the
       administrator of any Distribution Fund, pursuant to section 468B(g) of the Internal
       Revenue Code (IRC), 26 U.S.C. § 468B(g), and related regulations, and satisfy the
       administrative requirements imposed by those regulations, including but not limited to
       (a) obtaining a taxpayer identification number, (b) filing applicable federal, state, and
       local tax returns and paying taxes reported thereon out of the Receivership Assets
       and/or the Distribution Fund, and (c) satisfying any information, reporting, or
       withholding requirements imposed on distributions from the Receivership Assets and/or
       the Distribution Fund;

V.     Apply to this Court, with Notice provided as specified in paragraph XII below, for
       issuance of such other orders as may be necessary or in the judgment of the Receiver
       advisable in order to carry out the mandate of this Court and the duties of the Receiver.

## XI.

IT IS FURTHER ORDERED THAT copies of this Order may be served by any means,
including facsimile transmission, upon any financial institution or other entity or person that
may have possession, custody, or control of any Receivership Records or Receivership Assets.

## XII.

IT IS FURTHER ORDERED THAT, unless otherwise provided herein or by Court
Order, "Notice" by the Receiver of an event or filing under this Order shall be deemed complete
upon (a) provision of notice, or a copy of the filing at issue, including all filings with the Court,

14

to the SEC, the Defendants and Relief Defendants, and, with the exception of the sealed filings

described in the last sentence of X.R., above, any person or entity which, in the Receiver's sole

discretion, is directly impacted by the event or filing; and (b) publication of the notice or filing at

issue, including all unsealed filings with the Court, on a public website maintained by the

Receiver and/or his agents. Notice of this website shall be provided by the Receiver to parties in

interest, including the Defendants, Relief Defendants, and known partners and/or investors and

known creditors, along with a mechanism for alternative service for persons without internet

access. Until and unless the Receiver receives written notification of change by the affected

person or entity, Notice may be effected by facsimile, first class mail, or any receipted mail, to

(i) the SEC at the address that follows, (ii) the Defendants and Relief Defendants at the

address(es) of record with the Court clerk, and (iii) all other persons or entities at their last

publicly known address or address filed with the Clerk of Court.

Catherine E. Pappas, Esq.
United States Securities and
Exchange Commission
701 Market Street, Suite 2000
Philadelphia, PA 19106
Facsimile: 215-597-2740

## XIII.

IT IS FURTHER ORDERED THAT the Receiver shall:

A.     Keep the SEC apprised at reasonable intervals of developments concerning the operation

of the Receivership, and provide to the SEC, upon request, copies of any documents or

tangible things under the control of the Receiver;

B.     Within 120 days of this Order, submit a preliminary report in the form of the first

Receiver's Report to the Court, the SEC, and the Defendants and Relief Defendants,

subject to such reasonable extensions as the Court may order, to the extent reasonable, in

the format of the standardized Fund Accounting Report provided to the Receiver by the

SEC, and setting forth the following information:

1. All assets, money, funds, securities, and real or personal property currently held directly or indirectly as Receivership Assets, and any liabilities pertaining thereto, including without limitation, bank accounts, brokerage accounts, investments, business interests, and real and personal property, wherever situated, identifying and describing each asset and liability, its current location and amount;

2. A list of investors with the Source Entities, and to the extent practicable, the amount of principal invested by each investor, and the amounts withdrawn and/or otherwise paid to each investor; and

3. A plan and estimated schedule for further anticipated activities of the Receiver with respect to the Receivership Estate. Thereafter, the Receiver shall file supplemental reports of the same nature on the semiannual anniversary of the first report, or as otherwise requested by the Court or the SEC.

## XIV.

IT IS FURTHER ORDERED THAT, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty, the Receiver, the Law Firm, and the Accountant, and all persons engaged or retained by the Receiver pursuant to this Order, shall not be liable for any loss or damage incurred by any person or entity by reason of any act performed or omitted to be performed by the Receiver or those engaged or retained by him in connection with the discharge of their duties and responsibilities in connection with this Receivership; provided however, that nothing herein shall limit the immunity of the Receiver and his advisors allowed by law or deprive the Receiver and his advisors of indemnity for any act or omission for which they otherwise have immunity.

16

## XV.

IT IS FURTHER ORDERED THAT the reasonable costs and expenses of the Receiver, the Law Firm, and the Accountant shall be paid solely from Receivership Assets, including without limitation, the reasonable costs, fees, and expenses of all persons who may be engaged or retained by the Receiver pursuant to this Order to assist him in carrying out his duties and obligations hereunder.  Quarterly applications for costs, fees, and expenses of the Receiver, the Law Firm, and the Accountant, and those engaged or retained by the Receiver pursuant to this Order shall be made to the Court, setting forth, in a format acceptable to the SEC, reasonable detail about the nature of such costs, fees, and expenses; provided, however, that, at the discretion of the Receiver, actual invoices may be filed as an exhibit under seal.  At least thirty days before making such an application to the Court, the Receiver shall submit the application to the SEC, which may advise the Court whether they have any objection.  Upon Order of this Court approving such application, the Receiver may pay up to 80% of the compensation and professional fees and 100% of the expenses of the applicants.  At the close of the Receivership, the Receiver shall file with the Court a final application for compensation, fees, and expenses, describing in detail the costs and benefits associated with all litigation and other actions pursued in the course of the Receivership.  At that time, any amounts held back during the course of the Receivership will be paid at the discretion of the Court.

## XVI.

IT IS FURTHER ORDERED THAT this Order shall remain in effect unless and until modified by further order of this Court, and that this Court shall retain exclusive jurisdiction of the within proceedings for all purposes.

_____
The Honorable John R. Padova, U.S.D.J.

18

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES & EXCHANGE COMMISSION       :
                                       :
                    v.                 :       Civil Action No.
                                       :       09-CV-01634
DONALD ANTHONY WALKER YOUNG, et al     :

### DEFENDANT DONALD ANTHONY WALKER YOUNG'S ANSWER
### TO THE SEC'S FIRST REQUEST FOR ADMISSION

  Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, defendant Donald

Anthony Walker Young, through undersigned counsel, hereby responds as follows to the

plaintiff Security and Exchange Commission's First Request for Admission in the above-

captioned action.

1. **Admit that you directed the formation of Acorn Capital in 1999.**

  <u>Response</u>: Admitted that in 1999, Mr. Young, together with W.B. Dixon Stroud, Jr.
formed Acorn Capital.

2. **Admit that, upon the formation of Acorn Capital, you and Stroud were equal
partners in Acorn Capital.**

  <u>Response</u>: Admitted.

3. **Admit that, since the inception of Acorn Capital, you were its managing member.**

  <u>Response</u>: Admitted.

4. **Admit that, on or about January 1, 2001, Dixon Stroud transferred to you his
interest in Acorn Capital.**

  <u>Response</u>: Admitted.

5.    Admit that following January 1, 2001, you were aware that Dixon Stroud continued to hold himself out to investors as a partner in Acorn Capital.

    <u>Response</u>:    Admitted.

6.    Admit that, since the inception of Acorn Capital, you controlled Acorn Capital.

    <u>Response</u>:    Admitted.

7.    Admit that, since the inception of Acorn Capital, Acorn Capital acted by and through you.

    <u>Response</u>:    Admitted.

8.    Admit that, from the inception of Acorn Capital through June 25, 2009, you controlled Acorn Capital financial accounts.

    <u>Response</u>:    Admitted.

9.    Admit that Acorn Capital has been an investment adviser registered with the Securities and Exchange Commission since September 2001.

    <u>Response</u>:    Admitted.

10.    Admit that you directed the formation of ACM II in late 1999.

    <u>Response</u>:    Admitted that this is the approximate date.

11.    Admit that a purpose of ACM II was to invest in securities and other financial instruments of the United States and foreign entities.

    <u>Response</u>:    Admitted.

12.    Admit that, since ACM II's inception, Acorn Capital was the General Partner of ACMII.

    <u>Response</u>:    Admitted.

13.    Admit that, since ACM II's inception, you controlled ACM II.

Response:     Admitted.

14.    Admit that, from ACM II's inception through June 25, 2009, you controlled all ACM II financial accounts.

Response:     Admitted.

15.    Admit that from ACM II's inception, you controlled all aspects of ACM II's operations.

Response:     Admitted.

16.    Admit that from ACM II's inception, you controlled all investment decisions of ACM II.

Response:     Admitted.

17.    Admit that, since ACM II's inception, ACM II acted by and through you.

Response:     Admitted.

18.    Admit that the limited partners of ACM II, in their capacity as limited partners of ACM II, did not have any role in the management of the partnership.

Response:     Admitted except that Dixon Stroud assisted in raising funds for investment in ACM II.

19.    Admit that the limited partners of ACM II, in their capacity as limited partners of ACM II, did not have any role in the operation of the partnership.

Response:     Admitted except that Dixon Stroud assisted in raising funds for investment in ACM II.

20.    Admit that the limited partners of ACM II, in their capacity as limited partners of ACM II, did not control the investment of partnership funds.

Response:     Admitted.

21.    Admit that, from ACM II's inception until, at least, April 17, 2009, you controlled the disbursement of funds from ACM II financial accounts.

Response:      Admitted.

22.    Admit that, from ACM II's inception until, at least, April 17, 2009, you controlled the transfer of funds from ACM II financial accounts.

Response:      Admitted.

23.    Admit that, in order to transfer or disburse funds from ACM II financial accounts, you generally would provide to the financial institution written instructions as to the disbursement or transfer.

Response:      Admitted.

24.    Admit that, beginning in 1999, and continuing thereafter, ACM II accepted investments in ACM II.

Response:      Admitted.

25.    Admit that, beginning in 1999, and continuing thereafter, investors invested in ACM II as limited partners.

Response:      Admitted.

26.    Admit that ACM II did not maintain each limited partner's investment in ACM II in a segregated financial account.

Response:      Admitted.

27.    Admit that all investments in ACM II were combined in financial account(s) of ACMII.

Response:      Admitted.

28.     Admit that, from the inception of ACM II, you controlled the information provided to ACM II investors.

Response:      Admitted.

29.    Admit that, beginning in, at least, November 1999, you made withdrawals of investor funds from ACM II financial accounts for purposes other than those disclosed to ACM II investors.

Response:    Admitted that Mr. Young made withdrawals for purposes other than those disclosed to ACM II investors, however, he cannot recall the date this practice began.

**30.    Admit that, beginning in, at least, November 1999, you made unauthorized withdrawals of investor funds from ACM II financial accounts for purposes other than those authorized by ACM II investors.**

Response:    Admitted that Mr. Young made unauthorized withdrawals for purposes other than those authorized by ACMII investors, however, he cannot recall the date this practice began.

**31.    Admit that, beginning in, at least, November 1999, you withdrew investor funds from ACM II financial accounts and used the withdrawn funds for personal expenses.**

Response:    Admitted that Mr. Young made unauthorized withdrawals for personal expenses, however, he cannot recall the date this practice began.

**32.    Admit that, beginning in, at least, November 1999, without permission from ACM II investors, you withdrew investor funds from ACM II financial account and used the withdrawn funds for personal expenses.**

Response:    Admitted that Mr. Young made unauthorized withdrawals without permission from ACM II investors, however, he cannot recall the date this practice began.

**33.    Admit that, beginning in, at least, November 1999, you withdrew investor funds from ACM II financial accounts and used the withdrawn funds to benefit you and your family.**

Response:    Admitted that Mr. Young made unauthorized withdrawals to benefit him and his family, however, he cannot recall the date this practice began.

**34.    Admit that, beginning in, at least, November 1999, without permission from ACM II investors, you withdrew investor funds from ACM II financial accounts and directed the withdrawn funds to benefit you and your family.**

Response:    Admitted that Mr. Young made unauthorized withdrawals for his benefit and that of his family, however, he cannot recall the date this practice began.