IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS C. BECHTLE, in his capacity as | : | CIVIL ACTION |
| Receiver for Donald Anthony Walker Young, | : | |
| Acorn II, L.P., Acorn Capital Management, | : | |
| LLC and Neely Young | : | |
| | : | |
| v. | : | |
| | : | |
| DIANA WISTER AND WILLIAM WISTER, | : | |
| h/w, as Trustees of Investor 48, Diana S. Wister | : | |
| Charitable Remainder Unitrust dated February | : | |
| 21, 2003, ET AL. | : | NO. 13-3798 |

**MEMORANDUM**

**Padova, J.**                                                                                    **December 20, 2013**

Louis C. Bechtle, in his capacity as Receiver (the "Receiver") for Donald Anthony Walker

Young ("Young"), Acorn II, L.P. (the "Acorn II Fund" or the "Fund"), Acorn Capital

Management, LLC ("Acorn Capital") and Neely Young, asserts claims of common law unjust

enrichment and fraudulent transfer under the Pennsylvania Uniform Transfer Act ("PUFTA"), 12

Pa. Cons. Stat. Ann. § 5101 et seq., against Defendants Diana and William Wister, in their capacity

as directors of two entities, the Diana S. Wister Charitable Remainder Unitrust ("Unitrust") and

the Margaret Dorrance Strawbridge Foundation II of PA (the "Foundation").  The Wisters have

filed a Motion to Dismiss the Receiver's Complaint.  For the following reasons, we deny that

Motion.

I.      **BACKGROUND**

The Complaint alleges that, from 1999 through April 17, 2009, Donald Anthony Young

operated a Ponzi scheme through, inter alia, the Acorn II Fund.[1]  (Compl. ¶ 2.)  Young formed

---

[1] Acorn Capital served as the general partner and investment advisor for the Acorn II Fund
and a second limited partnership, Acorn Capital, L.P.  (Id. ¶ 17.)  Young was a partner and
managing member of Acorn Capital.  (Id.)

the Acorn II Fund to invest in securities and other instruments of the United States.   (Id. ¶ 17.)

The Fund solicited and accepted funds from investors, who became Acorn II Fund limited

partners.   (Id. ¶ 18.)   Although the investors were purportedly investing in accordance with the

Fund's stated purpose, from the beginning, Young fraudulently and improperly mishandled the

funds invested in the Acorn II Fund.   (Id.)   Essentially, Young combined the capital accounts of

the Fund investors and used funds invested by later investors to, among other things, pay "profits"

to earlier investors.   (Id. ¶ 22.)   By paying these false profits, Young was able to attract new

investors to the Fund, thereby perpetuating the fraud.   (Id.)   Young also withdrew investor funds

and used them for his and his family's benefit, paying personal expenses and funding personal

accounts held in his name and/or jointly with his wife, Neely Young.   (Id. ¶ 23.)   Throughout the

life of the Fund, the investor account statements that Young created for the Fund reflected amounts

in the investor capital accounts that exceeded the amount of assets actually in the Acorn II Fund.

(Id. ¶ 19.)

     The Wisters were limited partners in the Acorn II Fund.   (Id. ¶ 29.)   On behalf of

Unitrust, the Wisters invested $6,500,000 in two installments, on March 4, 2004, and December

31, 2004, and they withdrew $6,138,242 from the account on May 8, 2007.   (Id. ¶ 32 and Ex. C.)

On behalf of the Foundation, the Wisters invested a total of $11,575,000 on four dates in 2004 and

2006, and they withdrew a total of $11,842,755 in 2004 and 2006, with the final withdrawal

occurring on April 5, 2006, and amounting to $10,000,000.   (Id. ¶ 33 and Ex. D.)

     On April 17, 2009, the SEC filed a federal Complaint against Young, the Acorn II Fund,

Acorn Capital, and Neely Young, and sought both a temporary restraining order and an order

freezing the assets of the defendants.   (Id. ¶ 2.)   See SEC v. Young, Civ. A. No. 09-1634 (E.D.

Pa.) (the "SEC Action").   Pursuant to an Order dated June 25, 2009, we appointed the Receiver, whose goal and purpose is to, among other things, investigate, marshal and preserve the assets of the defendants in the SEC Action in order to maximize the recovery available to the investors that had been defrauded during Young's operation of the Ponzi scheme.   (Compl. ¶ 6 and Ex. A at 2-3.)   In connection with the SEC Action, Young admitted to misappropriating funds of certain investors to pay others and for his and his family's personal benefit.   (Id. ¶ 3 and Ex. B at ¶¶ 29-34 .)    In addition, on July 20, 2010, in a related criminal case, United States v. Young, Crim. A. No. 10-199 (E.D. Pa.), Young pled guilty to charges of mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1957.   (Id. ¶ 5.)

On April 12, 2011, we granted partial summary judgment in favor of the SEC in the SEC Action; found Young liable for violations of the Securities Act of 1933, 15 U.S.C. § 77q(a), the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6(1), (2), and (4); and entered judgment on liability against Young.   SEC v. Young, Civ. A. No. 09-1634, 2011 WL 1376045, *10 (E.D. Pa. April 12, 2011).   In doing so, we determined that the undisputed facts were that Young misappropriated more than $23 million in investor funds.   Id. at *9.

The Receiver instituted this action against the Wisters, seeking to avoid the transfers made to them by and through the Unitrust and the Foundation, during the course of Young's operation of the Ponzi scheme.   The Complaint contains two counts pursuant to PUFTA, 12 Pa. Cons. Stat. Ann. § 5014(a), and two counts of unjust enrichment.

## II.     LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider . . . the

3

complaint, exhibits attached to the complaint, [and] matters of public record." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original) (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

### III.     DISCUSSION

#### A.   Counts I and II – PUFTA

Counts I and II assert claims of fraudulent transfer under PUFTA § 5014(a), with Count I

asserting a claim against the Wisters as trustees of the Unitrust and Count II asserting a claim

against the Wisters as trustees of the Foundation.   According to the Receiver, the transfers of

funds from the Acorn II Fund to the Wisters are avoidable fraudulent transfers under section §

5104(a)(1) of PUFTA.

Section 5104 provides in relevant part that "[a] transfer made . . . by a debtor is fraudulent

as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud

any creditor of the debtor."   12 Pa. Cons. Stat. Ann. § 5104(a)(1).   The statute goes on to identify

a number of specific factors that may be considered in determining whether the transferor had

actual intent to defraud.[2]   Id. § 5104(b).   Significantly, a receiver has no duty to "allege that [the]

[d]efendants had knowledge of or participated in the underlying fraud in order to state a claim for

actual fraud."   Image Masters, Inc. v. Chase Home Finance, 489 B.R. 375, 395 (Bankr. E.D. Pa.

2013).

"The pleading requirements for [PUFTA] claims are set out by [Federal] Rule [of Civil

Procedure] 9(b), which requires a trustee to 'plead the circumstances constituting the alleged

---

[2] The factors are whether (1) the transfer was to an insider, (2) the transferor retained possession or control of the property after the transfer, (3) the transfer was disclosed or concealed, (4) the transferor had been threatened with a lawsuit before the transfer was made, (5) the transfer was of substantially all of the transferor's assets, (6) the transferor "absconded," (7) the transferor removed or concealed assets, (8) the value of the consideration received by the transferor was reasonably equivalent to the value of the asset transferred, (9) the transferor was insolvent or became insolvent shortly after the transfer was made, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the transferor transferred the essential assets of the business to someone who, in turn, transferred the assets to an insider of the transferor.   Id. § 5104(b)(1)-(11).

fraudulent conveyances with particularity.'"   Id. at 393 (quoting Bratek v. Beyond Juice, LLC,

Civ. A. No. 04-4491, 2005 WL 3071750, at *6 (E.D. Pa. Nov. 14, 2005)).   Generally, a plaintiff

can meet this requirement "by pleading the 'date, place or time' of the fraud, or through

'alternative means of injecting precision and some measure of substantiation into [his] allegations

of fraud.'"   Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus. Mach.

Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).   At the same time, "[m]alice,

intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R.

Civ. P. 9(b).   Where the allegation is that the defendant engaged in a Ponzi scheme, "the mere

existence of a Ponzi scheme is sufficient to establish 'actual intent to defraud.'"   SEC v. Forte,

Civ. A. Nos. 09-63, 09-64, 2009 WL 4809804, at *5 (E.D. Pa. Dec. 15, 2009) (quoting Donnell v.

Kowell, 533 F.3d 762, 770 (9th Cir. 2008)); In re C.F. Foods, L.P., 280 B.R. 103, 110 (E.D. Pa.

2002) ("One can infer an intent to defraud future . . . [investors] from the mere fact that a debtor

was running a Ponzi scheme." (second alteration in original) (quotation omitted)).

The Wisters argue that the Complaint fails to state a PUFTA claim upon which relief may

be granted under Rule 9(b)'s heightened pleading standard because it contains no facts and

circumstances surrounding the alleged fraudulent transfers and because it does not allege any of

the statutory factors in § 5104(b).   However, the Complaint alleges the dates and circumstances of

the precise transfers that are alleged to be fraudulent.   (Compl. ¶¶ 31-33.)   It also unequivocally

alleges that Young operated the Acorn II Fund as a Ponzi scheme and pled guilty to charges of

money laundering and mail fraud in connection with that scheme.   (Id. ¶¶ 5, 37).   It further

alleges that, when Young made the transfers to the Wisters, he intended the Acorn II Fund to incur,

or reasonably believed that the Acorn II Fund would incur, debts beyond its ability to pay them as

they became due.   (Id. ¶ 38.)   Indeed, according to the Complaint, when the transfers were made

to the Wisters, the Acorn II Fund had actual assets that were unreasonably small in relation to the

assets invested with the Acorn II fund by the limited partners.   (Id. ¶ 39.)

Under these circumstances, contrary to the Wisters' assertion, the Complaint plausibly

alleges the facts and circumstances of the alleged fraud.   While the Wisters are correct that the

Complaint does not allege any of the badges of fraud set forth in § 5104(b), it is not required to.

The statute, by its own terms, makes clear that the listed badges of fraud are simply factors that

"may be considered" and specifically acknowledges that there are other unenumerated factors that

may also be considered.   12 Pa. Cons. Stat. Ann. § 5104(b) ("In determining actual intent under

subsection (a)(1), consideration may be given, among other factors, to [the factors listed]."); C.F.

Foods, 280 B.R. at 109 ("The plain language of § 5104(a) clearly provides that other factors,

beyond those listed, can be considered in determining whether a transfer was made with actual

intend to defraud.   Therefore, even in the absence of any of the enumerated badges, a court can

find actual fraud.")   Where, as here, the Complaint plausibly alleges the existence of a Ponzi

scheme, it adequately alleges actual intent to defraud.   See, e.g., Forte, 2009 WL 4809804, at *5.

For the above reasons, we reject the Wisters' arguments that the Complaint does not satisfy

the pleading requirements set forth in Rule 9(b) in connection with the PUFTA claims.

Consequently, we deny their Motion insofar as it seeks dismissal of those claims.

### B.   Unjust Enrichment — Counts III and IV

In Counts III and IV, the Receiver asserts unjust enrichment against the Wisters, as trustees

of Unitrust and the Foundation.   To state a claim for unjust enrichment, a plaintiff must set forth

the following elements: "'(1) benefits conferred on [the] defendant . . . ; (2) appreciation of such

7

benefits by [the] defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for [the] defendant to retain the benefit without payment of value.'"   Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (quoting Limbach Co. v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)).

The Wisters argue that the Complaint fails to state unjust enrichment claims upon which relief may be granted because it essentially alleges that the Wisters merely withdrew money from the Acorn II Fund that belonged to them and, thus, "there can be no claim that the Wisters were unjustly enriched or received a benefit that would be inequitable."   (Defs.' Mem at 8-9.) However, the Complaint specifically alleges that "it would be inequitable for the Wisters to retain the benefits . . . because those payouts . . . from the Acorn II Fund were the product of a Ponzi scheme and were comprised of money paid into the Ponzi scheme by other Limited Partners." (Compl. ¶ 53.)   Indeed, as reflected in the public record of the SEC Action, there were insufficient funds in the Acorn II accounts to cover the amounts owed to investors and, as of April of this year, after significant asset recovery by the Receiver and a third distribution of receivership assets, many investors had still only recovered approximately 75% of their investments.   (See Mem. in Supp. of Motion for Proposed Third Interim Distribution at 1, SEC v. Young, Civ. A. No. 09-1534 (E.D. Pa April 3, 2013), ECF No. 321.)   Accordingly, the Receiver has plausibly alleged that the Wisters' recovery and retention of almost their entire principal investment is inequitable vis-à-vis other investors in the Acorn II Fund, who have sustained significant losses on their investments, with some of their investment money having been paid to the Wisters.

For these reasons, the Wisters have failed to establish that the Complaint fails to state unjust enrichment claims upon which relief may be granted.   We therefore deny the Wisters'

Motion insofar as it seeks dismissal of the unjust enrichment claims.

## IV.   CONCLUSION

For the foregoing reasons, we deny the Wisters' Motion in its entirety.    An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

9